IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LESLEE ROSALIE BLOODSTONE, | Cause No. CV 23-34-H-BMM |
| Plaintiff, | |
| vs. | ORDER |
| BRAIN GOOTKIN, JIM SALMONSEN, TERRIE STEFALO, CHRISTOPHER HARRIS, SGT. ADAMS, SGT. GILLARY, | |
| Defendants. | |

Plaintiff Leslee Rosalie Bloodstone ("Bloodstone") filed this action on May 17, 2023, alleging that Defendants violated her rights under the First and Fourteenth Amendments. Bloodstone ultimately filed an Amended Complaint and was granted leave to proceed IFP. (Doc. 5; Doc. 7.) It was determined her allegations were sufficient to require an answer. (Doc. 8.)

Because Bloodstone is a prisoner proceeding IFP, her Complaint required a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). This *sua sponte* screening procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that a defendant may later bring. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Lucas v. Jovanovich*, CV 15-76-

1

H-DLC-JTJ, 2016 WL 3267332, at *3 (D. Mont. June 10, 2016).

Defendants filed a motion to dismiss Bloodstone's complaint and brief in support. (Doc. 11; Doc. 12.) Bloodstone opposes the motion to dismiss. (Doc. 13.)

### I. Bloodstone's Allegations

At times pertinent to the claims contained in Bloodstone's complaint, she was incarcerated at the Montana State Prison ("MSP"). Bloodstone alleges that on March 3, 2023, while leaving the cafeteria, she was stopped by Defendant Harris and told to tuck her religious medallion under her shirt. (Doc. 7 at 4–5.) In response, Bloodstone told Harris she had a right under the Montana Constitution to not be discriminated against for her Wiccan beliefs and had the right to freely exercise and practice her freedom of expression. (*Id.* at 5.) Bloodstone stated that this exercise included wearing her Wiccan pentacle outside of her shirt if she so chose. (*Id.*) Bloodstone received a write-up for refusing a direct order. (*Id.*) Apparently, this was the second write-up Bloodstone received; the write-ups were issued by Sgt. Adams and Sgt. Gillary. (*Id.*)

Bloodstone grieved the issue. It was denied by Defendant Stefalo. Bloodstone asserts that Defendants Gootkin and Salmonsen who oversee MSP "signed off" on Montana Department of Corrections ("DOC") Policy 5.6.1, which Bloodstone believes to be unconstitutional. (*Id.* at 5, 13.) The specific portion of the Policy at issue, 5.6.1(III)(D)(6)(a), requires that inmates wear religious medallions tucked

under their shirt or coat except for when they are in their cells or attending a religious service or activity. *See e.g.,* (*Id.* at 13); *see also* (Doc. 11-1 at 4); (Doc. 11-5 at 9).

Bloodstone states the write-ups made her feel emotionally distraught and censored. She believes she has been singled out because she is a transgendered woman and a witch. (*Id.*) Bloodstone seeks $25,000 in punitive damages, asks that she be able to express her religion openly and freely, and requests that this Court direct DOC policy 5.6.1 be changed or amended in order to allow her to wear her medallion outside of her shirt when she chooses to do so. (*Id.*)

## II. Motion to Dismiss

For the reasons explained below, Defendants' motion to dismiss will be granted.

### i. Defendants' Argument

Defendants move to dismiss Bloodstone's Complaint alleging she failed to state a claim upon which relief could be granted. Defendants seek dismissal of the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 11.) Defendants' motion is accompanied by a detailed brief and exhibits in support. (Docs. 11, 11-1, 11-2, 11-3, 11-4, and 11-5.) Defendants argue that there is no inherent constitutional right to wear religious adornments in prison and, accordingly, there is no genuine issue in dispute. (Doc. 11 at 2.) Defendants further contend that the religious adornment restriction outlined in DOC Policy 5.6.1 is narrowly tailored

in the least restrictive means while furthering the legitimate governmental interest of maintaining safety and security. (*Id*. at 4–5.) Moreover, Defendants contend that the MSP administration should be afforded deference in relation to the manner in which they adopt policy to run the facility, including the imposition of rationally based restrictions to improve the institution. (*Id*. at 8.) Defendants point to other federal districts where similar religious adornment policies were upheld. (*Id*. at 9–10.) In short, Defendants assert Bloodstone failed to demonstrate that the restriction at issue was put in place to prohibit the free exercise of her religion; instead, it serves a legitimate correctional objective. (*Id*. at 10.)

### ii. Bloodstone's Response

Bloodstone filed a response, but specifically declined to address legal arguments advanced by the Defendants, including "case law or legal precedent." (Doc. 12 at 4.) Instead, Bloodstone believes the plain language of the First Amendment to the United States Constitution and Sections 4 and 5 of Article II of the Montana Constitution protect the exercise of her religious beliefs. (*Id*. at 1–3.) Bloodstone believes that her Wiccan pentacle protects her from harm or malice and that she should be allowed to openly display it. (*Id*. at 3.) Bloodstone explains that she received no harassment or attacks from fellow inmates due to her religious expression, but that Defendants have chosen to harass her under guise of the DOC policy at issue. (*Id*.) Bloodstone reasserts her belief that she has been singled out and

targeted by Defendants due to her gender identity/expression and religious beliefs. (*Id.* at 4.) The Court observes that Bloodstone has since been released from the Montana State Prison, *see* (Doc. 13), thus it appears any claims made for injunctive relief are now moot. *See e.g., Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).

### iii.    Relevant Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999).

To survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Hainers v. Kerner*, 404 U.S. 519, 520 (1972). A court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. Analysis

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise of religion. The [U.S.] Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise her religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the [U.S.] Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a "reasonableness" test less

restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" *Jones*, 791 F.3d at 1032 (quoting *O'Lone*, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); *see also Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting the U.S. Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies).

Bloodstone alleges that she is a sincere adherent to the Wiccan religion. She believes that wearing a Wiccan pentacle around her neck protects her from harm. It is apparently Bloodstone's practice to wear the medallion at all times. The sincerity of Bloodstone's beliefs is not in dispute. Additionally, a review of Defendants'

7

exhibits reveals that Wicca is one of the identified religious groups within the Department of Corrections. *See* (Doc. 11-1 at 13.) Both criteria being met, the Court finds the Free Exercise Clause is applicable to the present situation.

Once the initial showing is made, a prisoner must then establish that prison officials substantially burdened the religious practice by preventing her from engaging in conduct which the prisoner sincerely believes is consistent with her faith. *Shakur*, 514 F.3d at 884–85. A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to prisoners; (3) the impact accommodation of the right will have on guards and other prisoners, and on the allocation of prison resources; and (4) the absence of ready alternatives. *Id.* at 90.

The first *Turner* factor is the most important. *Jones v. Slade*, 23 F.4th 1124, 1135 (9th Cir. 2022). To evaluate whether a valid, rational connection exists, the Court must determine "'whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective." *Id*. (quoting *Mauro v. Arpaio*, 188 F.3d 1054, 1058 (9th Cir. 1999) (en

banc)). The challenged policy "cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89.

The Court "must apply a deferential standard of review to challenges regarding prison regulations." *Mauro*, 188 F.3d at 1058. "Prison officials need merely put forward a legitimate government interest and provide some evidence that the interest put forward is the actual reason for the regulation." *Casey v. Lewis*, 4 F.3d 1516, 1520–21 (9th Cir. 1993) (internal citations omitted).

On March 17, 2023, in response to Bloodstone's grievance, Defendant Stefalo explained the rationale behind Procedure No. 5.6.1(III)(D)(6)(a): "Just as you have a right to express your religion in certain instances, in accordance with procedure, others also have the rights in certain instances, to be free from others [sic] religious expressions. The Procedure is written to accommodate religious expression in approved means at approved times in order to facilitate the safety, security, and orderly operations of the Institution." (Doc. 11-2 at 1.) Defendants have a valid, rational connection between the policy and a legitimate governmental interest, that is, maintaining security and order within the facility. As explained by Defendants, the policy attempts to "prevent potential conflict among groups with certain affiliations wearing adornments for identification or (non-religious) ideological purposes, or for intimidation, which could lead to violence against an individual."

9

*See* (Doc. 11 at 6). Bloodstone has not shown that the policy is irrational or that it is not connected to the safety and security interests advanced by the Defendants. Thus, the first *Turner* factor weighs in favor of Defendants.

The relevant inquiry under the second *Turner* factor is "not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected," but rather, "whether the inmates have been denied of all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). Thus, curtailing "various ways of expressing belief, for which alternative ways of expressing belief may be found," does not implicate the First Amendment. *Id*. In the instant case, Bloodstone was allowed to wear her pentacle at all times, and she was allowed to wear it outside of her clothing while in her cell or attending religious services. The policy required her to wear the pentacle under her shirt or jacket in the common areas of the prison.

Bloodstone has not shown that the policy has denied her of all means of expressing her Wiccan religion, just that when she is in the public spaces of the prison she was required, like other inmates, to conceal her religious medallion under her clothing. Put another way, the accommodations of wearing her pentacle outside her clothing while in her cell or during a religious ceremony, but not in public spaces, did not prevent her from entirely exercising her religion. She could wear her pentacle 24 hours a day but was required do so in the same manner as those practicing:

Asatru/Odinism, Buddhism, Islamism, Judaism, Rastafari, Native American religions, Protestantism, and Roman Catholicism. Bloodstone has not established that the policy violates a critical tenant of her religious belief or expression. The second *Turner* factor weighs in favor of Defendants.

There is little discussion of the third and fourth factors from the Defendants and Bloodstone has failed to address *Turner* in any fashion. The third factor asks what kind of effect a religious accommodation will have on prison guards and other inmates. If all religions were allowed to openly wear their religious adornments at all times it could lead to violence or intimidation against certain groups, or potentially, as suggested by Defendants, certain medallions could be used as a physical weapon by the wearer or even used as a weapon against the wearer. *See* (Doc. 11 at 6). While there is limited support in the record for this contention, looking back to the overriding safety and security concerns, this potential for increased risk with accommodation weighs slightly in Defendants' favor.

Similarly, the final *Turner* factor also cuts in Defendants' favor. Aside from allowing all groups to openly wear religious adornments at all times, it is unclear how the policy could be readily altered. While Bloodstone desires to openly wear her pentacle at all times for protection, the policy concerns identified by Defendants are aimed at preventing individual inmates from being identified and singled out by others due to their beliefs. Bloodstone was not prohibited from possessing her

pentacle, just from displaying it in certain situations in order to reduce visibility for purposes of institutional security. As noted by the Defendants, the U.S. Supreme Court has reaffirmed the premise that even when claims are made under the First Amendment, courts should refrain from "substituting our judgment on . . . difficult and sensitive matters of institutional administrations, for the determinations of those charged with the formidable task of running a prison." *O'Lone*, 482 U.S. at 353 (internal citations omitted).

In light of these considerations, the Court finds Bloodstone has made an insufficient showing to support a finding that Policy 5.6.1(III)(D)(6)(a) substantially burdened her religious practice. Even if a burden existed, the compelling interest of prison safety justified this narrowly tailored and neutrally applied procedure. Prohibiting the display of religious medallions outside of an inmate's cell but allowing the inmate to wear them freely within the cell or during religious services is consistent with First Amendment protections and considerations discussed herein.

The Court will dismiss Bloodstone's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). "'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1072 (9th Cir. 2011) (quoting *Krainski v. Nev. ex rel. Bd. of Regents of Nev. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)); *Smith v. Johnson*, No. 22-35766, 2023 U.S. App. LEXIS

27560, at *1 (9th Cir. Oct. 17, 2023) (remanding to correct judgment to dismissal without prejudice) (unpublished). Bloodstone fails to state a claim for violation of her First Amendment rights. The conduct of which Bloodstone complains proves consistent with the First Amendment. Accordingly, it remains clear that Bloodstone's "complaint could not be saved by any amendment." *Maya v. Centex Corp.*, 658 F.3d 1060, 1072 (9th Cir. 2011) (internal quotations omitted). The Court will dismiss Bloodstone's complaint with prejudice.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 10) is **GRANTED**. The Amended Complaint is **DISMISSED** with prejudice.

2. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

3. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 20th day of June, 2024.

_____
Brian Morris, Chief District Judge
United States District Court